## OLE NELSON v. WARREN POTTER.

1. A will executed according to the law of the testator's domicile will pass personal property wherever situate, but with respect to devises of lands the will must be executed according to the formalities prescribed, by the law of the state in which the land is situated.

2. The probate of a will in one state, though conclusive as to personalty, if the probate be made at the testator's domicile, is of no force in establishing the sufficiency or validity of a devise of lands in another state. It can obtain such force only in virtue of some law of the state in which the lands lie.

3. The act of 1882 (*Pamph. L., p.* 112), amended and re-enacted May 11th, 1886 (*Rev. Sup., p.* 775), which authorizes the recording of wills probated in another state for the purpose of making title to lands in this state, simply makes such record or a transcript thereof competent evidence, dispensing with proof by the subscribing witnesses, leaving the legal effect of the will as a devise of lands to be determined as it would be if the original will was produced and proved.

4. A will recorded under the last-mentioned statute, though executed in a manner sufficient to devise lands at the testator's domicile, will not operate to devise lands in this state unless executed in the manner required for a devise of lands under the laws of this state.

On certificate upon a feigned issue out of the Court of Chancery.

Argued at November Term, 1887, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *John S. Voorhees.*

For the defendant, *A. Q. Keasbey.*

The opinion of the court was delivered by

DEPUE, J.    This suit involves title to certain lands situate in the county of Middlesex, in this state, of which Isaac J. Potter died seized.

The deceased, whose domicile was in California, died May 19th, 1885.    By his last will, dated November 19th, 1884,

he devised the residue of his estate, in which the lands in question were included, to two incorporated societies. The plaintiff derived title by conveyance from these societies. The defendant makes title as an heir-at-law of the deceased.

The testator's will was in writing, and signed by him, but not executed by him in the presence of subscribing witnesses. It is admitted that the will was made and executed in compliance with the laws of California, and that under the laws of that state it would be a valid testamentary disposition of lands. It was not made and executed in conformity with the law of this state, which requires all wills to be executed in the presence of two witnesses, present at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator. *Rev., p.* 1247, § 22. The certificate presents the question whether a will made and executed by a non-resident testator, in such a manner as by the law of his domicile would be a valid devise of lands, can operate to devise lands in this state, the will not having been executed in conformity with the law of this state.

The incidents of real estate, its disposition and the right of succession, depend upon the *lex rei sitæ*. The validity of bequests of personal property depends upon the law of the testator's domicile, and the validity of devises of real property upon the law of the state where the lands lie. Hence a will executed according to the law of the testator's domicile will pass personal property wherever situate, but with respect to devises of lands the will must be executed according to the formalities prescribed by the law of the state in which the land is situated. 4 *Kent* 513; *Story on Conflict of Laws,* § 474; *Wharton on Conflict of Laws,* § 585; *Jones* v. *Habersham,* 107 *U. S.* 174; 179; *Robertson* v. *Pickrell,* 109 *U. S.* 608; *Pratt* v. *Douglas,* 11 *Stew. Eq.* 516; 1 *Jarman on Wills* (*Randolph's ed.*) 1, and note *b*.

The courts of one state are without jurisdiction over title to lands in another state. The clause of the federal constitution which requires full faith and credit to be given in each state to the records and judicial proceedings of every other state, ap-

plies to the records and proceedings of courts only so far as they have jurisdiction. *Public Works* v. *Columbia College,* 17 *Wall.* 521 ; *Davis* v. *Headly,* 7 *C. E. Green* 115–121. Hence the probate of a will in one state, though conclusive as to title to personalty, if the probate be made at the domicile of the testator, is of no force in establishing the sufficiency or validity of a devise of land in another state. It can obtain such force only in virtue of some law of the state in which the lands are situate. *McCormick* v. *Sullivant,* 10 *Wheat.* 192 ; *Darby* v. *Mayer,* 10 *Wheat.* 465 ; *Watts* v. *Waddle,* 6 *Peters* 389 ; *Robertson* v. *Pickrell,* 109 *U. S.* 608 ; *Brine* v. *Insurance Co.,* 96 *U. S.* 627, 635. The state legislature might provide that lands within the state should pass by a devise in a will executed according to the law of the state or country in which the testator was domiciled. But an act of legislation of that import would be so extraordinary and impolitic in its tendency to introduce doubt and uncertainty in the title to lands that a statute of that similitude would not be allowed that effect unless such intent was expressed in clear and unequivocal language.

The testator's will was duly probated in the office of the clerk of Tuolumna county, California, May 27th, 1885, and an exemplified copy thereof filed and recorded in the surrogate's office of Middlesex county, in this state, May 2d, 1887, in compliance with the act of the legislature of May 11th, 1886. *Rev. Sup., p.* 775. It is contended by the plaintiff that by force of this statute a will not executed in the manner prescribed by the law of this state is nevertheless operative to devise lands in this state if it be executed according to the formalities required for a devise of lands by the law of the state or country where the testator was domiciled.

The act in question provides that when any will shall have been admitted to probate in any state or territory of the United States or the District of Columbia, or in any foreign state or kingdom, and any person shall desire to have *the same recorded in this state, for the purpose of making title to lands or real estate in this state,* it should be lawful for the surro-

gate of any county in this state, upon an exemplified copy of such will and of the certificate of probate thereof and of the letters testamentary, exemplified and attested as mentioned in the act, being filed in his office, to record such will, certificate and letters, and file the said copy in his office. The act further provides that *any such will, certificate and letters, being so recorded, should have the same force and effect, in respect to all lands and real estate whereof the testator died seized, as if the said will had been admitted to probate and letters testamentary had been issued in this state.* It also provides that all conveyances theretofore or thereafter made by any executor or by any devisee *should be as valid as if said will had been admitted to probate, and letters testamentary, &c., had been issued in this state,* and that such record or certified copies thereof should be received in evidence in all courts of this state.

This statute was originally passed March 28th, 1866. *Nix. Dig.,* p. 1035, § 40. It was repealed in 1872 (*Pamph. L.,* p. 58), and restored in 1873 (*Pamph. L.,* p. 168), and was included in the Orphans' Court act in the Revision of 1874. *Rev.,* p. 757, § 26. It was re-enacted with some amendments in 1882 (*Pamph. L.,* p. 112), and again in 1886, with some other amendments (*Rev. Sup.,* p. 775); but the act as it now stands is, so far as concerns this suit, substantially the same as it was when it was passed in 1866. The act as passed in 1866 was entitled "A supplement to the act relative to the probate of wills from other or foreign states," which was an act passed April 15th, 1846. *Nix. Dig.,* p. 1032, § 31. The act of 1846, to which the act of 1866 was a supplement, was originally passed March 6th, 1828, under the title of "An act relative to the probate of wills" (*Harr. Com.* 195), and with some additions, of no importance in this case, was included in the Revision of 1846, under the title above mentioned.

When the act of 1828, providing for the record of foreign wills, was passed, statutes were in force making the record of wills originally proved under the laws of this state, either in the Prerogative Court or before the surrogate, or transcripts thereof, competent evidence of the same validity and effect as

if the original will were produced and proved. The germ of this legislation was the act of March 17th, 1713–14 (*Nix. Dig., p.* 1034; *Rev., p.* 1249), which in the second section provided that wills thereafter made in writing, signed and published by the testator in the presence of three subscribing witnesses, and regularly proved and entered upon the books of records or registers, should be sufficient to devise and convey lands, tenements, hereditaments or other estates, as effectually to all intents and purposes as if the testator had conveyed the same away in his lifetime, and that the books in which they were registered or recorded should be accepted and be sufficient evidence at all times and places. The fourth section declared that the copy of any will made in any of his majesty's colonies by which any real estate within this colony is devised, being proved according to the custom of such colony, and certified under the great seal of such colony, should be received in evidence in any of the courts within this province, and be esteemed as valid and sufficient as if the original will or testament was then and there produced and proved. This act is still in force (the word " colony " being taken to include " state "), except as modified by the act concerning wills, of March 12th, 1851 (*Rev., p.* 1247), with respect to the number of witnesses required and the mode of executing and attesting wills. *Graham* v. *Whiteley*, 2 *Dutcher* 254, 259; 4 *Griff. Am. Reg., p.* 1241, § 72. Mr. Griffith, in commenting on the act of 1713–14, and other provisions for authenticating wills made in other states, as furnishing evidence of the existence and of the probate of such a will in another state, containing a devise of lands in this state, adds that " still it [the will] must appear to be executed in such manner as our law requires for the devising of real estate lying here." 4 *Griff. Am. Reg., p.* 1241, § 72, *note* 1.

None of these acts which make the record of probate or transcripts thereof evidence was designed to change the law with respect to the manner in which wills were required to be executed to make a valid devise of lands. When these acts were passed, and down to the act of 1851, a will of personalty

was valid, and therefore entitled to probate, though it was executed without any subscribing witnesses, and at the same time a will was inoperative to devise lands unless executed in the presence of subscribing witnesses and with certain formalities provided by statute regulating that subject.   The object of these acts was simply to provide instruments of evidence to dispense with the production of the subscribing witnesses in support of title by devise.   As was said by Chief Justice Beasley, "the intention was to make them *prima facie* evidence, for the sake of convenience."   *Otterson* v. *Hofford*, 7 *Vroom* 129, 133.   If the will as probated showed a will executed in such a manner as was required for a valid devise of lands, the record of the probate or a transcript thereof was *prima facie* evidence of the title of the devisee.   If the record did not exhibit a will so executed, the record or transcript went for naught.   *Den* v. *Allen*, 1 *Penn.* 35, 38, 42, 43 ; *Allaire* v. *Allaire*, 8 *Vroom* 312, 318, 319 ; *S. C.*, 10 *Vroom* 113.

The act of 1846, which applies to foreign wills, must receive the same construction ; for by the third section of that act it is declared that such record or certified copies thereof should be evidence in the same manner and have the same force and effect as if such will had been proved in the usual manner under the existing laws of this state.   It was so decided in *Allaire* v. *Allaire, supra.*

It was contended by the plaintiff, to sustain this devise, that the act of 1886 (*Rev. Sup.*, *p.* 775), requires a broader construction.   The argument was based upon the phrase, " shall desire to have the same recorded in this state for the purpose of making title to lands or real estate in this state," and the fact that conveyances theretofore or thereafter made by executors or devisees were validated.   The reason for the introduction of the words above quoted, with respect to the purpose for which such will was recorded, is apparent.   The act of 1846 contemplated letters testamentary or of administration upon the recording of the will, and required a bond with security from non-residents for the faithful administration of the testator's estate.   In some instances the record of a foreign

will in this state was needed exclusively as a muniment of title, without any administration on the testator's estate. The supplements of 1866 and 1886 were designed to meet this situation of affairs. Provision was therein made for recording the will for the sole purpose of making title to lands or real estate in this state without letters testamentary or of administration thereon, and consequently without any bond for the administration of the testator's estate. And it will be observed that in every instance in these statutes in which the effect of such a record is declared, it is declared that such will, upon being recorded, "shall have the same force and effect, in respect to all lands and real estate whereof the testator died seized, as if said will had been admitted to probate and letters testamentary or of administration with the will annexed had been issued in this state," and that conveyances of such real estate by the executor or devisee "shall be as valid as if said will had been admitted to probate and letters testamentary or of administration with the will annexed had been issued in this state." In this language the legislature expressed a purpose to put such a will, when recorded, on the same footing with respect to lands as wills recorded under the act of 1866. The language in which these statutes are expressed gives no countenance to the supposition that the legislature intended to suspend the statute concerning wills with respect to lands in this state in favor of foreign testators, or to give the record of foreign wills an effect which it has not given to domestic wills duly probated in our courts. The whole of the legislation with respect to the force and effect of the probate and recording of wills, domestic or foreign, upon the title to lands, is of the same character. The record of probate or a transcript thereof is made competent evidence, dispensing with proof by the subscribing witnesses, leaving the legal effect of the will as a devise of lands to be determined as it would be if the original will was produced and proved. The testator's will, if produced and proved, would be inoperative to devise lands in this state. It acquired no additional force from the recording.

A certificate will be made that the title to the lands in question did not pass under the testator's will, but descended to his heirs-at-law.

In preparing this opinion I have not overlooked the fact that upon the testator's death in 1885 the lands in question descended to his heirs-at-law, and that their title was vested before the act of 1886 was passed. But inasmuch as the act of 1882, which was in force when the testator died, is in all respects material to this controversy identical with the act of 1886, I preferred to consider the case as if controlled by the latest act on this subject.