DIENST *v.* DIENST.

FRAUDS, STATUTE OF—MARRIAGE—PROMISE MADE IN CONSIDERATION OF—DIVORCE.

In divorce proceedings, a demurrer was correctly sustained to the husband's cross-bill which averred that, as a further consideration for the consummation of the engagement of marriage, complainant, the wife, agreed that she would, immediately after marriage, make such provision that defendant would become the owner of her property at her death, that defendant gave up his employment and prospects of political preferment and entered on the engagement. The agreement was invalid because it was not in writing as required by 3 Comp. Laws, § 9515, subd. 3 (4 How. Stat. [2d Ed.] § 11399), and was clearly "made upon consideration of marriage," not in consideration of defendant's abandoning his prospects and employment.

Appeal from Kalamazoo; Knappen, J. Submitted November 21, 1912. (Docket No. 156.) Decided May 29, 1913.

Bill by Anna E. J. J. S. Dienst against Andrew Dienst for divorce. From an order sustaining a demurrer to defendant's cross-bill, defendant appeals. Affirmed.

*Titus, Van Horn & Titus,* for complainant.

*D. O. French,* for defendant.

MCALVAY, J. Complainant filed her bill of complaint against defendant, praying for divorce on the ground of extreme cruelty. Defendant appeared and filed an answer to said bill of complaint, coupled with a cross-bill, wherein he set up a verbal antenuptial contract, by which it is claimed that she agreed to make provisions for him after the marriage by executing a will of all her property in his favor in case he survived her. The relief prayed for in said cross-bill is that complainant produce and file such will, which is claimed to have been made soon after the marriage, and that it be declared binding as a settlement of the property rights of the parties; that in case the will has been destroyed by her she be required to make and execute a duplicate thereof; that in case she refuses so to do within the period of five days after decree, the decree stand in the place and stead of said will and be final; that the rights and interest of defendant in said property be declared fixed, binding, and vested; that complainant be enjoined from disposing of any of her property except in accordance with the agreement claimed, and for general relief. He does not pray for a decree of divorce. Issue was joined by a replication to the answer.

A general demurrer was interposed by complainant to the cross-bill of defendant on the ground of want of equity for several reasons, the chief of which was that the claimed antenuptial contract was within the statute of frauds. This provision of the statute reads:

"Every agreement, promise or undertaking, made upon consideration of marriage, except the mutual promises to marry, shall be void unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith." Section 9515, subd. 3, 3 Comp. Laws.[1]

The claimed agreement, which defendant seeks by his cross-bill to specifically enforce, he avers was entered into between the parties before any engagement or contract of marriage existed between them. The material part of it is set forth in his cross-bill, as follows:

"And the said complainant then and there, as a further consideration for the consummation of said engagement of marriage, promised and agreed that she would, immediately after their said marriage, make such provision that the said defendant would come into possession and ownership of all of her said property upon her death, and that thereupon, immediately thereafter, relying upon such representations, promises, and agreements on the part of the said complainant, and in consideration thereof, he gave up and abandoned his employment, position, and prospects, * * * which he then and there had, and immediately proposed marriage to the said complainant" (suggesting delay in a matter of so great importance), "but that said complainant then and there stated that she had fully considered the matter and was satisfied, and declined to further consider said matter, and immediately thereupon accepted the defendant's proposition of marriage."

A very brief statement of the circumstances which brought about the marriage between these parties will be made. It appears that in November, 1908, a correspondence between them was begun, the initial letter having been written by complainant. Both were subscribers to the publication of a marriage brokerage called "The Correspondent," in which complainant

---

[1] 4 How. Stat. (2d Ed.) § 11399.

discovered an attractive description of defendant. Complainant was of the age of 62 years and defendant 66 years. Both had been previously married, and each had been widowed by death. She was possessed of an estate, real and personal, in her own right, of between sixty and seventy thousand dollars. Defendant was penniless. A lurid correspondence, thus begun between the parties, of which we are furnished only that of complainant, appears as exhibits to his cross-bill (he modestly withholding his contributions to the same), and within a few months culminated in their engagement, which was speedily followed by a marriage, growing out of which this litigation, to sever the marital relations between them, naturally followed.

Counsel for defendant apparently appreciates and admits that if the agreement sought to be enforced was made and entered into upon consideration of marriage, not having been reduced to writing, it is void under the statute of frauds. However, he contends that the agreement relied upon by him was "not made upon consideration of marriage"; that the agreement was that if defendant would give up his home and employment and abandon prospective political preferment, come to Kalamazoo, marry, and reside with complainant and not return to Kansas, she would not only support him, but would make a will, as already stated. It appears, however, that the only agreement which defendant charges in his cross-bill was entered into by complainant, and which he avers he relied upon, is the agreement set forth in the excerpt from his cross-bill above quoted, to the effect that she—

"Then and there, as a further consideration for the consummation of the said engagement of marriage promised and agreed that she would, immediately after their said marriage, make such provisions that the said defendant would come into the possession and ownership of all of her said property upon her death."

That this was the inducement appears from his averment as follows:

"And that thereupon immediately thereafter, relying upon such representations, promises, and agreements on the part of the said complainant, and in consideration thereof, he gave up and abandoned his employment, position, and prospects, * * * which he then and there had, and immediately proposed marriage to the said complainant," which proposal complainant immediately accepted.

It is clear to us that this claimed agreement and undertaking between these parties was made upon consideration of marriage, and was within the prohibition of the statute of frauds. It was therefore void and not enforceable.

The other questions discussed in the briefs of the parties do not require consideration. The order and decree of the circuit court in sustaining the demurrer of complainant is affirmed, and the cross-bill is dismissed, with costs of both courts to complainant. The cause will be remanded, and will proceed in due course.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.